Michael S. Freeman, Colo. Bar #30007
Michael A. Hiatt, Colo. Bar #41178
mfreeman@earthjustice.org
mhiatt@earthjustice.org
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO  80202
(303) 623-9466 (phone)
(303) 623-8083 (facsimile)

Henry Egghart, Nev. Bar #3401
226 Hill Street
Reno, Nevada 89501
(775) 329-2705 (phone)
(775) 852-5309 (facsimile)
Attorneys for Intervenors and Cross-Claimants

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **3:99-CV-00547-MMD-(WGC)** |
| v. | ) | |
| | ) | |
| **JOHN C. CARPENTER, and ELKO** | ) | |
| **COUNTY, NEVADA, et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **THE WILDERNESS SOCIETY and** | ) | |
| **GREAT OLD BROADS FOR** | ) | |
| **WILDERNESS,** | ) | |
| | ) | |
| **Intervenors and Cross-Claimants.** | ) | |

## INTERVENORS AND CROSS-CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON CROSS-CLAIMS AND ON QUIET TITLE ACT CLAIM

Intervenors and Cross-Claimants The Wilderness Society and Great Old Broads for Wilderness (collectively, TWS) respectfully submit this motion for summary judgment on their cross-claims challenging Plaintiff United States of America's (the USA) decision to enter the 2001 settlement agreement, which recognized a Revised Statute 2477 (R.S. 2477) right-of-way for a road in the Jarbidge South Canyon (the Settlement). TWS also requests entry of judgment against Defendant Elko County on the merits of the County's Quiet Title Act (QTA) claim that it owns such an R.S. 2477 right-of-way.

Following a two-week hearing, the Court in August 2016 rejected the proposed consent decree between Elko and the USA. See ECF No. 600 at 38-39. The Court rejected the proposed consent decree because Elko failed to show it has a valid R.S. 2477 right-of-way, and thus the settlement agreement had the effect of improperly transferring federal property to the County. Id. After the August 2016 Order, there are only two remaining matters necessary for the Court to resolve in this dispute: (1) TWS's cross-claims under the Administrative Procedure Act (APA) and (2) the merits of Elko's Quiet Title Act claim.

First, the Court's holding in its August 2016 Order also requires summary judgment on TWS's APA cross-claims. Elko contends that even after the Court's rejection of the consent decree, its agreement with the USA should remain effective as a settlement agreement without court approval. ECF No. 603 at 2. But the Settlement violates the law as a contractual agreement for the same reason it does as a consent decree: because Elko does not have an R.S. 2477 right-of-way, the agreement between Elko and the USA would dispose of federal lands without "comply[ing] with applicable laws and policies." ECF No. 600 at 39. The Settlement disregards the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701-1787, Forest Service regulations, and the National Environmental Policy Act (NEPA), 42 U.S.C. §§

1

4321-4370m-12.  These violations exist regardless of whether the agreement between Elko and the USA takes the form of a consent decree or a settlement.  Indeed, the USA itself has recognized this point.  Pages 10-11, infra.

Elko and the USA cannot achieve a result the Court has already rejected as contrary to law simply by agreeing to the same terms between themselves.  Congress required courts to approve Quiet Title Act settlements as a safeguard to protect the public interest.  Allowing public property to be transferred to Elko County based on a meritless R.S. 2477 claim represents precisely the type of abuse barred by the QTA.

In addition to the Settlement's legal violations, summary judgment on the cross-claims is also warranted because the USA's decision to enter into the settlement agreement was arbitrary and capricious.  Elko's theory that "continuous public use" created a road in the South Canyon during the period when it could have established an R.S. 2477 right-of-way runs contrary to the evidence and is pure speculation.  Because the administrative record does not support Elko's R.S. 2477 claim, it was arbitrary and capricious for the USA to recognize that meritless claim in the Settlement.  The Court should grant summary judgment in TWS's favor on its cross-claims, ECF No. 151 at 5-7, and set aside the settlement agreement.

The second matter remaining for this Court to resolve involves the merits of Elko's QTA claim.  The Court should enter judgment against Elko on this claim because at the November 7, 2016 status conference, the County acknowledged that the Court's August 2016 Order is also dispositive of the merits of the QTA claim.  An order that both (1) awards summary judgment on TWS's cross-claims and (2) resolves the merits of the QTA claim will allow the Court to enter final judgment and bring this long-running case to a conclusion.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The Jarbidge South Canyon lies in the Humboldt-Toiyabe National Forest at the southern end of the Jarbidge Canyon in Elko County, Nevada.  ECF No. 600 at 4-5; ECF No. 519 at 2-3 (stipulated facts).  The South Canyon Road (the Road) runs along the Jarbidge River in the bottom of the canyon.  ECF No. 600 at 5.

2.      Historically, the Road has been prone to dirt slides and flooding that have forced the Forest Service to close it for extended periods of time both for safety reasons and to protect environmental resources.  ECF No. 165 at 2 (2003 ruling).

3.      After a 1995 flood washed out the Road, the Forest Service considered closing it to avoid future washouts.  Id. at 2-3.  Such a closure would also have protected the bull trout, an imperiled fish that occupies the Jarbidge River.  See id.

4.      In 1998, the Elko County Commissioners requested that the Forest Service grant the County a right-of-way over the Road so that Elko could reconstruct the Road itself.  Id. at 3.  When the Forest Service denied that request, the County Commissioners passed a resolution asserting that Elko held an existing R.S. 2477 right-of-way for the Road.  Id.  The Forest Service responded that "[w]e are unaware of any evidence that would support the position that the County has a right-of-way to maintain or reconstruct the South Canyon Road."  ECF No. 285, Ex. L.

5.      In July 1998, without Forest Service approval, three members of the five-member Elko County Commission ordered county employees to begin rebuilding the Road using heavy equipment.  ECF No. 165 at 2-3; ECF No. 157 at Ex. 10 (Elko Cty. Resolution No. 74-98).  This vote occurred while County Manager George Boucher was on vacation.  Mr. Boucher has

described learning of the Commissioners' action upon returning from vacation as "one of the worst days of my life" because he recognized that the unauthorized road work violated the law. See ECF No. 285, Ex. H at 77:10-80:7.

6.      The County Commissioners' decision also disregarded the advice of their counsel. The County District Attorney's office warned the Commissioners against "doing work on federal ground and disregarding federal directives."  ECF No. 285, Ex. I.  County District Attorney Gary Woodbury also advised the Commissioners that the evidence did not support their R.S. 2477 claim and suggested that their effort to assert authority over the Road was a "sham."  ECF No. 285, Ex. J at 5-7; accord ECF No. 285, Ex. K (reporting district attorney's "judgment . . . that the road isn't county property").

7.      This lawsuit began in 1999 when the USA filed suit against several Elko County individuals who were planning to perform additional reconstruction work on the Road.  ECF No. 1 at 2.  The Court ordered Elko joined as a defendant in the case.  ECF No. 5 at 1.  The County then asserted a counter-claim under the Quiet Title Act, 28 U.S.C. § 2409a, alleging that Elko owned an R.S. 2477 right-of-way in the South Canyon.  ECF No. 9 at 6.

8.      The parties pursued settlement negotiations in 1999-2000.  In June 2000, Elko and the USA tentatively agreed to a settlement in which the USA would grant the County a new right-of-way under current statutory authorities.  See ECF No. 420 at 3-4 (June 2000 settlement § III); ECF No. 167 at 4.  On November 8, 2000 (the day after the 2000 presidential election), the Elko Board of County Commissioners voted to reject that settlement and instead to pursue an R.S. 2477 right-of-way.  ECF No. 419 at 17-20 (Nov. 8, 2000 Elko Cty. Bd. of Comm'rs Mtg. Mins.).

9.      In March 2001, Elko and the USA reached a new settlement agreement.  ECF No. 118 at 1-18.  In that agreement, the USA reversed its earlier position and committed that it "will not now or in the future contest that Elko County has an R.S. 2477 right of way for a road" in the South Canyon.  Id. at 7 (Settlement § II).  The parties asked the Court to approve their settlement as a consent decree, which the Court did in April 2001.  See id. at 23-27.

10.     TWS intervened to oppose entry of the Settlement, and challenged it by asserting APA cross-claims against the USA.  TWS alleges that the Settlement transfers or disclaims a federal property interest without complying with the legally-required procedures for doing so and thus violates FLPMA, Forest Service regulations, and NEPA.  ECF No. 151 at 5-7.

11.     After considering evidence presented by TWS, the Court suspended the Settlement in June 2003, ruling that "this court no longer finds the settlement to be fundamentally fair to the public interest because it allows the government to circumvent the procedural mandates laid out by Congress" for issuing a right-of-way.  ECF No. 165 at 13.  The Court reaffirmed that ruling in 2004.  ECF No. 186 at 12-13.

12.     Following reassignment of this case to a different judge, the Court in 2006 reinstated the Settlement.  ECF No. 296 at 21-22.  That 2006 Order, however, was reversed and vacated on appeal.  United States v. Carpenter, 526 F.3d 1237, 1241 (9th Cir. 2008).  On remand, there have been extensive proceedings regarding the settlement agreement.

13.     At Elko's request, ECF No. 510, the Court held an eight-day evidentiary hearing in 2015 to allow the County to present its full case in support of the R.S. 2477 claim.  ECF Nos. 557-565.

14.     After post-hearing briefing, the Court entered an Order in August 2016 analyzing the evidence in detail and concluding that it could not approve the Settlement as a consent

decree.  ECF No. 600 at 38-39.  The Court ruled that "Elko County has failed to show by clear and convincing evidence — indeed, even by a preponderance of the evidence — that it has a right-of-way through the Jarbidge South Canyon.  Because the consent decree would give Elko County the disputed right-of-way in contravention of applicable law and policy, the Court must reject the proposed consent decree."  Id. at 39.

15.     Although the August 2016 Order rejected the consent decree, it did not expressly dispose of Elko's Quiet Title Act claim seeking the R.S. 2477 right-of-way.  At a November 7, 2016 status conference, however, Elko acknowledged that the Court's August Order also is dispositive of the merits of the QTA claim.  The Court indicated that it would issue an order addressing the merits of the QTA claim.  See ECF No. 604.

16.     The August 2016 Order also did not expressly address whether the Settlement had any continuing effect in the absence of its approval as a consent decree.  Elko County has taken the position that "the Settlement Agreement, in its entirety, remains a valid and enforceable contract between the USA and Elko County and will remain so absent further order of the Court."  ECF No. 603 at 2 (status report).  Given the County's position, the Court directed the parties to submit motions and briefing on TWS's cross-claims.  ECF No. 604.

## ARGUMENT

## I.     STANDARD OF REVIEW

A settlement decision may be challenged under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, where the plaintiff alleges that the terms of the settlement exceed the agency's legal authority.  Carpenter, 526 F.3d at 1241-42; Exec. Bus. Media, Inc. v. U.S. Dep't of Def., 3 F.3d 759, 762-63 (4th Cir. 1993).  Under the APA, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary,

capricious, an abuse of discretion, . . . otherwise not in accordance with law," or "in excess of statutory . . . authority."  5 U.S.C. § 706(2)(A), (C).

In determining whether the agency's action meets this standard, the reviewing court must engage in "a substantial inquiry[,] . . . a thorough, probing, in-depth review."  Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953, 960 (9th Cir. 2005) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).  Such review must "be based on the full administrative record before the agency when it made its decision."  Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 556 (9th Cir. 1989) (emphasis in original).  Generally, courts reviewing an agency decision under the APA are limited to the administrative record and do not consider evidence that was not before the agency at the time of its decision.  Lands Council v. Powell, 395 F.3d 1019, 1029-30 (9th Cir. 2004).

## II.     THE SETTLEMENT VIOLATES FLPMA, FOREST SERVICE REGULATIONS, AND NEPA.

### A.     Applicable Law

The Property Clause of the United States Constitution places strict limits on the Executive Branch's authority to dispose of federal property:  an agency may do so only pursuant to a statutory authorization from Congress.  U.S. Const. art. IV, § 3, cl. 2; Royal Indem. Co. v. United States, 313 U.S. 289, 294 (1941); see, e.g., Union Oil Co. of Cal. v. Morton, 512 F.2d 743, 748 (9th Cir. 1975).

This limitation applies to settlement agreements entered into by federal agencies.  While the Justice Department has broad authority over litigation, that authority "does not authorize [it] to settle disputes in a manner inconsistent with statutes or regulations which have the force of law and which implement congressional directives."  ECF No. 165 at 12 (2003 ruling); accord Carpenter, 526 F.3d at 1242.  Where an agency agrees in a settlement to perform ultra vires acts,

"the general authority of the Justice Department over the conduct of government litigation . . . does not compensate for the [agency's] lack of authority."  Nat'l Audubon Soc'y, Inc. v. Watt, 678 F.2d 299, 308 n.18 (D.C. Cir. 1982).  The Justice Department's "authority to settle litigation for its government clients stops at the walls of illegality."  Exec. Bus. Media, 3 F.3d at 762 (ruling that settlement must comply with agency regulations); accord Carpenter, 526 F.3d at 1242.

Congress has provided two options for federal agencies to relinquish public property.  First, an agency may grant an applicant a new right-of-way under FLPMA, 43 U.S.C. §§ 1761(a)(6), 1763-1765, or Forest Service regulations, 36 C.F.R. §§ 251.53(j), (l)(6), 251.54-251.56 (2016).[1]  FLPMA and Forest Service rules impose various requirements to protect the public interest and the environment when such rights-of-way are issued.  For example, an applicant for a FLPMA right-of-way must submit specific information with its application, and the federal grant must include conditions to protect air and water quality, as well as "require location of the right-of-way along a route that will cause least damage to the environment."  43 U.S.C. § 1765; see also §§ 1763-1764 (designation and application requirements under FLPMA); 36 C.F.R. §§ 251.53(l)(6), 251.54, 251.56(a)(1) (Forest Service regulations with similar protective requirements).  Further, NEPA requires that before issuing a new right-of-way, the Forest Service must prepare an environmental impact statement or environmental assessment analyzing the reasonably foreseeable impacts of that decision and disclosing them to the public.  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4 (2016); see also, e.g., Nev. Power Co. v. Watt, 711 F.2d 913, 930 (10th Cir. 1983) (NEPA analysis "a necessary prerequisite" to granting FLPMA

---

[1] The National Forest Roads and Trails Act (FRTA), 16 U.S.C. §§ 532-538, also provides for granting rights-of-way.  The same Forest Service regulations govern issuance of both FLPMA and FRTA rights-of-way.  36 C.F.R. §§ 251.53(j), (l)(6).

right-of-way); Sierra Club v. U.S. Dep't of Energy, 287 F.3d 1256, 1261-62, 1265-66 (10th Cir.

2002). Right-of-way applications can be denied by the Forest Service on a variety of grounds.

See, e.g., 36 C.F.R. § 251.54(e).

Second, when a party claims to have an existing property right, the USA may relinquish

its title by "disclaiming" the federal government's interest in the property. A disclaimer

"eliminate[s] the title dispute" and precludes the USA from claiming an interest in the property

in the future. Alaska v. United States, 201 F.3d 1154, 1162 (9th Cir. 2000). Under certain

circumstances, FLPMA authorizes the Interior Department to issue administrative disclaimers of

property. See 43 U.S.C. § 1745. A FLPMA Section 1745 disclaimer requires a formal written

application and publication of notice in the Federal Register at least 90 days prior to issuance of

the disclaimer. 43 U.S.C. § 1745(b). The application and notice must set forth "the grounds

supporting such application." Id.; see also 43 C.F.R. §§ 1864.0-1 to 1864.4-4 (2016) (describing

procedures for Section 1745 disclaimer). In addition, the QTA allows the USA to settle title

disputes by issuing disclaimers — if the disclaimer is approved by the court. 28 U.S.C. §

2409a(e).

### B. Summary Judgment Should Be Awarded in TWS's Favor Because the Settlement Violates Applicable Laws for Relinquishing Federal Property.

The Settlement must be set aside because it does not comply with any of the laws

applicable to transferring or relinquishing federal property. Elko and the USA do not claim that

they: (1) followed the procedures for granting a new right-of-way under FLPMA or Forest

Service regulations or (2) issued a disclaimer under FLPMA or the QTA. Their failure to

comply with these laws requires entry of judgment in favor of TWS on its cross-claims. As the

Ninth Circuit ruled in this case, it would be "'alien to our concept of law to allow the chief legal

officer of the country to violate its laws under the cover of settling litigation.'" Carpenter, 526

F.3d at 1242 (quoting Exec. Bus. Media, 3 F.3d at 762).  Because the USA did not comply with federal requirements for transferring or relinquishing federal property, the Settlement is illegal and should be set aside.

This Court's August 2016 Order also requires setting aside the settlement agreement. The Court ruled that "the consent decree gives land of the United States to Elko County without following proper procedural requirements."  ECF No. 600 at 39.[2]  That holding applies with equal force to TWS's cross-claims challenging the Settlement.  Whether through a consent decree or a settlement agreement, an agency cannot resolve a lawsuit in a manner that "conflicts with or violates" an applicable statute.  Conservation Nw. v. Sherman, 715 F.3d 1181, 1185-86 (9th Cir. 2013) (agency cannot violate "procedural requirements in . . . voluntary resolution of litigation"); compare ECF No. 600 at 39 (rejecting consent decree because it does "not comply with applicable laws" and is "in contravention of applicable law") with 5 U.S.C. § 706(2)(A) (APA requires that agency action shall be set aside if "not in accordance with law").

The USA itself has recognized that TWS's cross-claims turn on "the same basic proposition" as approval or rejection of the consent decree:  whether "compliance with statutory procedures for the disposal of federal land" is required.  ECF No. 500 at 19.  The USA has explained that "[i]f Elko County did not already have a right-of-way" under R.S. 2477, and such a right-of-way is recognized in the Settlement, "the settlement must fail because the Ninth Circuit has held the government lacks authority to do so, absent compliance with statutory

---

[2] The Court also recognized this law when it suspended the Settlement in 2003 and 2004.  See ECF No. 165 at 12; ECF No. 186 at 8-9.  This Court held that the Settlement's recognition of an R.S. 2477 easement "equates to the issuance of a right-of-way, which triggers the requirement that the government comply with FLPMA, NEPA, and Forest Service regulations."  ECF No. 165 at 13.  The Settlement improperly "allows the government to circumvent the procedural mandates laid out by Congress" for transferring federal property.  Id.; see also ECF No. 186 at 8-9 (ruling in 2004 that "the effect of the settlement agreement was to convey an easement to Elko County" without complying with the law).

procedures for the disposal of federal land — none of which were applied to the settlement."  See ECF No. 505 at 9; see also ECF No. 500 at 14 ("[I]f the right-of-way did not pre-exist [the Settlement], the Ninth Circuit's decision compels the conclusion that statutory requirements for disposition of federal land did apply (and inasmuch as they were not followed here, the settlement could not be approved)."); ECF No. 404 at 2-3 (citing Carpenter, 526 F.3d 1242 and Exec. Bus. Media, 3 F.3d at 762).

Even the plain language of the Settlement shows that it transfers a right-of-way to Elko County in violation of the law.  The agreement recognizes that the location and alignment of the Road might need to be "moved from its present location" in the South Canyon.  ECF No. 118 at 9.  This provision requires that if the Road is moved, the USA will not contest that the new location is an R.S. 2477 right-of-way.  Id.  But because Congress repealed R.S. 2477 in 1976, "[o]bviously, a brand new road constructed in an unspecified location would not meet the statutory requirements for an R.S. 2477 right of way."  ECF No. 186 at 5 (2004 ruling).  This Court observed in 2004 that "whether or not such a right of way exists, the parties have agreed to act as if it does, and to assume the legal rights and obligations such a right of way would impose."  Id.  This paragraph of the agreement shows that "no R.S. 2477 right of way exists, and that the parties are employing references to R.S. 2477 largely in an attempt to circumvent other statutory and regulatory procedures for granting an easement over public lands."  Id. at 5-6.

Whether the Settlement between Elko and the USA takes the form of a consent decree or a contractual agreement, it exceeds the USA's legal authority because it effectively transfers a right-of-way to Elko without complying with FLPMA, NEPA, or Forest Service regulations.

### C.     The USA Cannot Evade the Law by Relinquishing Property in a Settlement After the Court Refused to Approve It.

Because the Court has already rejected their agreement, Elko and the USA cannot accomplish the same result simply by foregoing court approval of the Settlement.  The QTA requires court approval of settlements that relinquish, or "disclaim[]," federal property.  28 U.S.C. § 2409a(e).  Elko's argument that the parties can recognize an R.S. 2477 right-of-way without Court approval, after this Court has found insufficient evidence to support its claim, ignores the QTA's legal safeguards.

The QTA provides "the exclusive means by which adverse claimants c[an] challenge the United States' title" to property in litigation.  Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983); accord Robinson v. United States, 586 F.3d 683, 688 (9th Cir. 2009); Cty. of Shoshone v. United States, 912 F. Supp. 2d 912, 921 (D. Idaho 2012) (ruling QTA "is the sole avenue by which Plaintiff can prove the existence of its R.S. 2477 rights in court").  When it enacted the QTA, Congress required court approval for the federal government to settle a case by conceding a plaintiff's claim to public property.  The QTA provides:  "If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff . . . which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease" unless it has some other basis of jurisdiction.  28 U.S.C. § 2409a(e).

The requirement of Court approval for all disclaimers serves to ensure that public property is not lost by improper recognition of invalid claims.  Prior to passage of the QTA in 1972, the "predominant view" was that "citizens asserting title to or the right to possession of lands claimed by the United States were 'without benefit of a recourse to the courts,' because of the doctrine of sovereign immunity.  Congress sought to rectify this state of affairs" by waiving its immunity for such cases.  Block, 461 U.S. at 282 (quoting S. Rep. No. 92–575, at 1 (1971)).

During consideration of the legislation, concerns were raised about stale or meritless claims, disruption of federal operations, and other issues. See id. at 283. To address those concerns, Congress adopted a number of requirements in the QTA as "safeguards for the protection of the public interest." Block, 461 U.S. at 283-85 (quoting Dispute of Titles on Public Lands: Hearing Before the Subcomm. on Public Lands of the S. Comm. on Interior & Insular Affairs, 92nd Cong. 21 (1971) (statement of Shiro Kashiwa, Assistant Att'y Gen., U.S. Department of Justice)); see also S. Rep. No. 92–575, at 7-8 (1971).

One such safeguard is the requirement for court approval of all disclaimers. See H.R. Rep. No. 92-1559 (1972), reprinted in 1972 U.S.C.C.A.N. 4547, 4550, 1972 WL 12541 (noting "addition [in bill that became the QTA] of language which requires t[h]at a disclaimer must be confirmed by order of court"); To Permit Suits to Adjudicate Disputed Titles to Land in Which the U.S. Claims an Interest: Hearing Before Subcomm. No. 2 of the H. Comm. on Judiciary, 92nd Cong. 82 (1972) (statement of Kent Frizzell, Assistant Att'y Gen., U.S. Department of Justice) (indicating that Congress saw the need for judicial confirmation of a disclaimer).

This Congressionally-mandated safeguard would become meaningless if, after a Court refuses to approve a disclaimer, the parties could reach the same result by agreeing to it themselves in a settlement. As the Supreme Court observed, if such a maneuver were allowed "the carefully-crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted. 'It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading'" in a settlement. See Block, 463 U.S. at 284-85 (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 833 (1976)) (rejecting argument that plaintiff could challenge federal government title through an "officers suit" instead of a QTA claim). The QTA does not permit

the USA and Elko to proceed with their settlement agreement after this Court has refused to approve those same terms.

Moreover, no other provision of the QTA (or any other statute) authorizes the federal government to relinquish property through settlement of a lawsuit without judicial scrutiny.  And under the Property Clause of the Constitution, federal agencies cannot give up federal property without such a statutory authorization from Congress.  Page 7, supra.  For example, FLPMA's disclaimer provision provides an alternative mechanism for the federal government to relinquish property under certain circumstances without using the QTA procedure.  See 43 U.S.C. § 1745.  But in passing FLPMA, Congress recognized that agencies lack authority to relinquish federal real property unless authorized by Congress:  "Under existing law, the Secretary of the Interior has no authority to issue any kind of document showing that the United States has no interest in lands."  H.R. Rep 94-1163 (1976), reprinted in 1976 U.S.C.C.A.N. 6175, 6185, 1976 WL 14070, at *11.  The existence of a lawsuit does not excuse federal agencies from complying with Constitutional limits on disposal of federal property.  "[T]he general authority of the Justice Department over the conduct of government litigation . . . does not compensate for the [agency's] lack of authority."  Nat'l Audubon Soc'y, 678 F.2d at 308 n.18.  The Justice Department's settlement authority does not allow it to violate the laws governing its client agency.  Exec. Bus. Media, 3 F.3d at 762; accord Carpenter, 526 F.3d at 1242.

As this Court has concluded on multiple occasions, the Settlement serves "to circumvent other statutory and regulatory procedures for granting an easement over public land."  ECF No. 186 at 5-6; ECF No. 165 at 13-14; ECF No. 600 at 38-39.  By doing so, it violates FLPMA, NEPA, and Forest Service regulations that govern transfers of public property.  See ECF No. 151 at 4-7.  If the USA wants to transfer a right-of-way to Elko, it must do so by issuing a new

easement in compliance with FLPMA, Forest Service regulations, and NEPA — not by misusing the repealed R.S. 2477 statute.

## III.  THE ADMINISTRATIVE RECORD DOES NOT SUPPORT ELKO'S R.S. 2477 CLAIM.

The Settlement's legal flaws make it unnecessary for this Court to delve into the voluminous evidence again when resolving the cross-claims.  Pages 9-15, supra.  But a review of the record also shows that the Settlement is arbitrary and capricious because it runs contrary to the evidence in the administrative record.  Elko's R.S. 2477 claim is based on pure speculation rather than evidence meeting the standard for establishing such a right-of-way.

This Court reviews TWS's cross-claims based on the administrative record before the USA when it agreed to the Settlement in 2001.  Lands Council, 395 F.3d at 1029-30; Thompson, 885 F.2d at 556.  Under the APA, an agency action must be set aside if it "runs counter to the evidence before the agency" or is otherwise arbitrary and capricious.  Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983); Organized Vill. of Kake v. U.S. Dep't of Agric., 795 F.3d 956, 966 (9th Cir. 2015) (en banc).  Courts will reverse an agency decision that is "based on speculation" rather than evidence.  Del. Dep't of Nat. Res. & Envtl. Control v. Envtl. Prot. Agency, 785 F.3d 1, 11 (D.C. Cir. 2015); Great Am. Ins. v. United States, 55 F. Supp. 3d 1053, 1065 (N.D. Ill. 2014) ("An agency cannot base its decision on speculation.").

The administrative record does not document the existence of a road in the South Canyon before the area was reserved as a national forest in January 1909, which was the last date that Elko could have established an R.S. 2477 right-of-way.  ECF No. 600 at 28.  Instead, evidence in the administrative record shows the South Canyon Road was built during a mining boom that began in Fall 1909, too late to create an R.S. 2477 right-of-way.  See US Ex. 710 (AR 15407)

(Frampton and R. Wilson historical analysis); TWS Ex. AR 9445X; ECF No. 591 at 6-8 (TWS post-hearing brief summarizing evidence and citing to exhibits from administrative record). Furthermore, maps and surveys generated before 1909 uniformly showed roads and trails in other parts of Elko County and not running through Jarbidge Canyon.  ECF No. 591 at 12-21 (summarizing historical documents from administrative record).  Given this history, the Settlement's premise that a road existed in the South Canyon prior to 1909 "runs counter to the evidence before the agency" in the administrative record.  State Farm, 463 U.S. at 43.

Elko has pointed to administrative record evidence of (very limited) pre-1909 activity in the larger Jarbidge Canyon and theorized that "continuous public use" could have established a road in the South Canyon during that period.  See ECF No. 600 at 28.[3]  That evidence, however, fails to satisfy the legal standard for an R.S. 2477 right-of-way.  The Court rejected Elko's legal argument that even "a single use" of an area or "sporadic" use by "a single person" represented "continuous public use."  ECF No. 600 at 34-35.  The continuous public use standard requires more than "'merely' [providing] evidence that vehicles may have passed over the land at some time in the past."  S. Utah Wilderness All. v. Bureau of Land Mgmt., 425 F.3d 735, 781 (10th Cir. 2005).  A claimant also must show more than "haphazard, unintentional, or incomplete" activity in an area.  Id.

Instead, a claimant must show "continued use of the road by the public for such length of time and under such circumstances as to clearly indicate an intention on the part of the public to accept the grant" under R.S. 2477.  Id.  Infrequent travel along a route is not sufficient to

---

[3] TWS disputes that Nevada law permitted a right-of-way to be established by continuous public use during this period.  See ECF No. 600 at 28 & n.16.  TWS also contends that the South Canyon was reserved for public use well before 1909, thus preventing the creation of an R.S. 2477.  Id. at 29-32.  TWS recognizes that this Court has already ruled on these issues but respectfully submits that they provide alternative grounds for granting summary judgment.

establish an R.S. 2477 right-of-way.  See San Juan Cty. v. United States, 754 F.3d 787, 799 (10th Cir. 2014); Cty. of Inyo v. Dep't of Interior, 873 F. Supp. 2d 1232, 1244 (E.D. Cal. 2012); see also ECF No. 600 at 32-34 (discussing case law).

Applying the correct standard for continuous public use, the Court found "no evidence" that "visitors engaged in continuous public use of a trail or other thoroughfare" in the South Canyon before 1909.  ECF No. 600 at 12; see also id. at 21 & n.12 (finding "no evidence" of continuous use for grazing or by indigenous people before 1909), 37 (finding "no evidence" suggesting that prospectors David Bourne and John Escalon necessarily went through South Canyon in 1909).  For example, all parties agree that General Land Office surveyor Dennis Scully traveled through the Canyon on a single day in 1896.  ECF No. 600 at 14-16.  But the administrative record shows that Scully did not record a road or trail in the South Canyon, despite doing so in numerous other locations.  Id.  And nothing in the record suggests that Scully ever returned to the South Canyon — much less traveled there regularly.  Similarly, no one contests that William Perkins had a cabin several miles north of the South Canyon from 1903 to 1904.  See id. at 16-18.  But no evidence shows that Mr. Perkins regularly traveled several miles away into the South Canyon during that period.  To the contrary, maps of the Perkins cabin show that it was located adjacent to a trail crossing the Jarbidge Canyon on an east-west route that did not go through the South Canyon.  Id. at 16-18, 24.

As the Court held, the "mere possibility that a handful of people traveled through the Jarbidge South Canyon [before 1909] is not sufficient to establish an R.S. 2477 right-of-way."  ECF No. 600 at 38.  No evidence in the administrative record:  (a) described any continuous public use of South Canyon prior to 1909 or (b) depicted a road or trail in the South Canyon

during that period.  Elko "failed to demonstrate any continuous public use of a route through the Jarbidge South Canyon before 1909."  Id. at 28.

At the 2015 hearing, Elko relied heavily on evidence from outside the administrative record to support its R.S. 2477 claim.  But that extra-record evidence is immaterial for purposes of the cross-claims.  For example, the centerpiece of Elko's case — an 1894 county map it claimed showed a road in the South Canyon — first appeared in this case as part of that hearing.  See ECF No. 600 at 8-11, 35-36; ECF No. 566 (including Elko Ex. 1191 in exhibit list).  As the Court noted, the 1894 map is the "only direct evidence suggesting" the existence of a road or trail in the South Canyon during the period (prior to 1909) when an R.S. 2477 right-of-way could have been created.  ECF No. 600 at 8.  Elko acknowledges, in fact, that apart from the 1894 map "the parties have not located any . . . governmental record showing that the South Canyon Road was placed in continuous public use" before 1909.  Id.  But that map was not before the USA when it agreed to the Settlement in 2001, and the map therefore is not pertinent to this Court's review of the cross-claims.

Further, Elko presented extensive live testimony at the 2015 hearing by witnesses Dr. Cydnee McMullen, Mike and Bill Price, and Wayne Burkhardt offering opinions about the likelihood that a road or trail was established in the South Canyon before 1909.  That testimony also represents non-administrative record evidence and is immaterial for APA review of the cross-claims.  Thompson, 885 F.2d at 556 (finding materials part of record on review only because they were considered by the agency prior to the agency decision); Camp v. Pitts, 411 U.S. 138, 142 (1973) (requiring APA review to be based on the "administrative record already in

existence, not some new record made initially in the reviewing court").[4]  The 1894 map and live

testimony have no bearing on whether the USA acted arbitrarily and capriciously based on the

record before it when it agreed to the Settlement in 2001.  For purposes of the cross-claims,

Elko's R.S. 2477 claim must stand or fall based solely on the documents in the administrative

record.

At bottom, Elko's attempt to infer the existence of a road in the South Canyon before

1909 amounts to nothing more than "speculating" that one might have existed.  ECF No. 600 at

37.  A federal agency cannot relinquish public property based on such rank speculation.  See

Holmstrom v. Metro. Life Ins., 615 F.3d 758, 775 (7th Cir. 2010) (holding agency decision

arbitrary and capricious because "speculation is not a substitute for evidence" in the record);

Detsel by Detsel v. Sullivan, 895 F.2d 58, 64 (2d Cir. 1990) (rejecting agency argument because

"we can hardly accept an agency's reliance on 'evidence' that is itself mere speculation").  If

Elko's speculation were enough, the USA could relinquish R.S. 2477 rights-of-way in almost

any river canyon in the western United States.  Allowing the parties to do so in this settlement,

and without court approval, would seriously compromise the public interest and fly in the face of

applicable laws and the Constitution's Property Clause.

Because all the evidence in the administrative record runs counter to Elko's theory that

continuous public use created a road in the South Canyon prior to 1909, the Settlement's

recognition of an R.S. 2477 right-of-way is arbitrary and capricious.  TWS is entitled to

---

[4] In any event, the Court found that this extra-record evidence does not document the existence of an R.S. 2477 right-of-way.  As the Court concluded, the 1894 map depicts the Mardis Toll Road and Bruneau River, which lay miles to the west of the Jarbidge Canyon.  ECF No. 600 at 9-11.  Elko simply mis-read the map.  Similarly, Elko's live testimony was too speculative to support the County's claim.  See, e.g., ECF No. 600 at 12 n.8 (Michael Price), 26 & n.14 (Dr. McMullen).

summary judgment on its cross-claims because, like the proposed consent decree, the Settlement has the effect of improperly transferring a right-of-way to Elko.

**IV.    IN THE ALTERNATIVE, THE SETTLEMENT AGREEMENT SHOULD BE SET ASIDE BECAUSE THE USA AND ELKO COUNTY CANNOT AGREE ON WHETHER TO SEVER THE PROVISIONS REJECTED BY THE COURT'S AUGUST 2016 ORDER.**

Alternatively, the Settlement should be set aside in its entirety because the USA and Elko no longer agree on its status following the August 2016 Order.

The settlement agreement states that a "provision of this Agreement that is held to be invalid or unenforceable is severable unless severance would be inequitable to one or more of the Parties." ECF No. 118 at 14.  In its August 2016 Order, the Court rejected two provisions:  (a) the agreement to obtain a consent decree, see id. at 13 (parties agree to obtain entry of their agreement as an order of the court), and (b) the agreement's recognition of an R.S. 2477 right-of-way, id. at 7; ECF No. 600 at 39.  Following the Order, the invalid R.S. 2477 provisions (and the consent decree language) could be severed from their agreement if Elko and the USA agreed that doing so was equitable.

They have not agreed to do so, however.  Elko and the USA do not appear to agree on whether the settlement agreement has any continuing validity absent its approval as a consent decree, or without its R.S. 2477 provisions.  Elko contends that even after the August 2016 Order, the Settlement "remains a valid and enforceable contract between the USA and Elko County." ECF No. 603 at 2.  The USA, however, has not concurred with Elko's position.  To the contrary, the USA has made clear that its intent to settle the case was contingent on Elko supporting its R.S. 2477 claim.  The USA explained:  "[I]t has never been the United State[s'] intention to grant Elko County an easement through this proposed decree. . . .  [If] the Court determines that no R.S. 2477 right-of-way exists, the Federal Defendants will withdraw their

request for approval of the proposed consent decree." ECF No. 404 at 4. Because the parties no longer agree on this basic question, the agreement must be set aside in its entirety.[5]

## V.   THE COURT SHOULD ENTER JUDGMENT AGAINST ELKO ON THE MERITS OF THE QUIET TITLE ACT CLAIM.

Finally, the Court should also enter judgment on the merits of Elko's QTA claim. At the November 7, 2016 status conference, the County acknowledged that the August 2016 ruling on the consent decree also disposes of the merits of its QTA claim. The Court indicated that such an order would be forthcoming. See ECF No. 604. TWS also respectfully requests entry of judgment against the County on this claim.

Granting judgment on the merits of the QTA claim (along with summary judgment on TWS's cross-claims) will allow this Court to resolve all the outstanding issues in the case and enter a final judgment. Such an order would bring this long-running case to a close in this Court.

---

[5] The Court previously made a similar point in connection with the consent decree: "it would be absurd for the Court to even consider approving the proposed consent decree when the parties to the settlement agreement (i.e., the United States and Elko County) appear unwilling to commit to a unified description of the rights conferred with respect to South Canyon Road." ECF No. 507 at 4.

## <u>CONCLUSION</u>

The Court should grant summary judgment for TWS on its cross-claims and set aside the

settlement agreement in its entirety.  In addition, the Court should enter judgment against Elko

County on the merits of its QTA claim.


Dated:  December 12, 2016                  <u>s/Michael S. Freeman</u>
Michael S. Freeman
Michael A. Hiatt
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9615 phone
(303) 623-8083 fax
<u>mfreeman@earthjustice.org</u>
<u>mhiatt@earthjustice.org</u>

Attorneys for Intervenors and Cross-Claimants
THE WILDERNESS SOCIETY and GREAT OLD
BROADS FOR WILDERNESS

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2016, I filed a true and correct copy of **INTERVENORS AND CROSS-CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON CROSS-CLAIMS AND ON QUIET TITLE ACT CLAIM** via the Court's ECF system, with notification sent to those listed below.

Blaine Welsh (Blaine.Welsh@usdoj.gov)
Kathryn Armstrong (karmstrong@ag.nv.gov)
David Gehlert (david.gehlert@usdoj.gov)
Mark Torvinen (mtorvinen@elkocountynv.net)
Kristin A. McQueary (kmcqueary@elkocountynv.net)
Curtis F. Moore (cmoore@elkocountynv.net)
Holly A. Vance (Holly.A.Vance@usdoj.gov)
Henry Egghart (hegghart@nvbell.net)
Robert B. Wiygul (robert@waltzerlaw.com)
Lawrence Vandyke (lvandyke@ag.nv.gov)
C. Wayne Howle (whowle@ag.nv.gov)
Adam P. Laxalt (usdcfilings@ag.nv.gov)

In addition, the foregoing document was sent by electronic mail to: Gary D. Woodbury, gwoodbury@frontier.com.


/s/ Michael S. Freeman